UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | 3:14-CR-30092-RAL |
| Plaintiff, | |
| vs. | ORDER DENYING MOTION TO DISMISS INDICTMENT |
| CODY JAMES HORSE LOOKING, | |
| Defendant. | |

Federal law prohibits the possession of a firearm by a person "who has been convicted . . . of a misdemeanor crime of domestic violence." 18 U.S.C. § 922(g)(9). Defendant Cody James Horse Looking pleaded guilty in state court to the simple assault of his wife. He was later indicted by a federal grand jury for violating § 922(g)(9). Horse Looking has moved to dismiss his indictment, arguing first that his simple assault conviction does not qualify as a misdemeanor crime of domestic violence because his conviction did not have "as an element, the use or attempted use of physical force," 18 U.S.C. § 921(a)(33)(A)(ii), and second that § 922(g)(9) does not apply to him because his civil rights have been restored within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii). Because Horse Looking's conviction satisfies the force requirement of § 921(a)(33)(A)(ii) and did not result in the loss of any civil rights within the "core cluster," this Court denies Horse Looking's motion to dismiss the indictment.

1

## I. Background

In 2010, Horse Looking was charged in a South Dakota state court with the simple assault of his then wife Cassandra Horse Looking (Cassandra) in violation of South Dakota Codified Law (SDCL) § 22-18-1.[1] Doc. 33-1 at 4–5. Horse Looking pleaded guilty to the offense in January 2011. Doc. 33-1 at 7; Doc. 33-2. Before accepting Horse Looking's plea, the state court judge outlined the nature of the simple assault charge, saying:

> [T]he Grand Jury returned an Indictment that charged you with simple assault, domestic violence. The domestic part is the person who's alleged to be the victim here, who is Cassandra Horse Looking, who I think at the time you had been married to her. That's the domestic part.
> The simple assault part is that you attempted to cause -- you threatened to cause, or you intentionally caused bodily injury to her. That charge of simple assault domestic violence is a Class 1 misdemeanor. The maximum sentence for that is a year in the county jail, a $2,000 fine, or both of those things.

Doc. 33-2 at 4. The judge then questioned Horse Looking about the charge:

> THE COURT: So what happened on August 28th? What was the assault? What happened?
> [HORSE LOOKING]: Umm, got into an argument and she became physical and she cut me and I pushed her. And she laughed, came back with the cops the next day, and I ended up going to jail.
> THE COURT: Okay. So did you do any type of physical assault on her?
> [HORSE LOOKING]: Yes.
> THE COURT: Okay. And what, did you threaten some sort of -- to her, was there some injury to her?
> [HORSE LOOKING]: I pushed her, she caused -- she fell down.
> THE COURT: Did that cause some cuts or bruises then?
> [HORSE LOOKING]: Not that I was aware of.
> [HORSE LOOKING'S ATTORNEY]: I think she testified that she had some abrasions on her ankle or knee or something like that as a result of the incident.

---

[1] Although SDCL § 22-18-1 does not contain the term "domestic violence," the caption of Horse Looking's indictment read "Simple Assault Domestic Violence." Doc. 33-1 at 4. South Dakota law directs states attorneys to indicate on the complaint whether the charged crime involves domestic abuse. SDCL § 25-10-34.

2

> THE COURT: Is that what we're talking about, [prosecutor]?
> [PROSECUTOR]: Yes. And I think there was another shove that resulted in her hitting her head on the wall and it put a hole in the wall.
> THE COURT: Well, based on what has been said, though, I'm going to find the plea is voluntary and there's a factual basis for that plea. I'm going to withhold a finding of guilt until I've heard from everybody on the request for a suspended imposition of sentence.

Doc. 33-2 at 5–6. The judge later granted Horse Looking's request for a suspended imposition of sentence on the condition that he have no violations of law for twenty-four months. Doc. 33-2 at 11; Doc. 33-1 at 7–8.

In September 2011, a state court judge found that Horse Looking had failed to obey the law, revoked Horse Looking's suspended imposition of sentence, and found him guilty of simple assault. Doc. 33-3 at 18; Doc. 33-1 at 19–20. Approximately three years later, a federal grand jury indicted Horse Looking in this case for violating § 922(g)(9).

## II. Analysis

Section 922(g)(9) makes it unlawful for any person "who has been convicted . . . of a misdemeanor crime of domestic violence" to "possess in or affecting commerce, any firearm or ammunition." The Supreme Court recently explained the purpose of this law:

> This country witnesses more than a million acts of domestic violence, and hundreds of deaths from domestic violence, each year. Domestic violence often escalates in severity over time, and the presence of a firearm increases the likelihood that it will escalate to homicide. "[A]ll too often," as one Senator noted during the debate over § 922(g)(9), "the only difference between a battered woman and a dead woman is the presence of a gun."

United States v. Castleman, 134 S. Ct. 1405, 1408–09 (2014) (alteration in original) (footnote and internal citations omitted). Because many domestic abusers are convicted only of misdemeanors, they are not subject to felon-in-possession statutes. Id. at 1409. Congress

3

enacted 18 U.S.C. § 922(g)(9) to "close [this] dangerous loophole." Id. (quoting United States v. Hayes, 555 U.S. 415, 426 (2009)); see also United States v. Keeney, 241 F.3d 1040, 1043 (8th Cir. 2001); United States v. Smith, 171 F.3d 617, 625 (8th Cir. 1999).

Section 921(a)(33)(A) defines "misdemeanor crime of domestic violence" as an offense that:

> (i) is a misdemeanor under Federal, State, or Tribal law; and
>
> (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33)(A)(i)–(ii) (footnote omitted). Subsection (a)(33)(B) provides:

> A person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

Id. § 921(a)(33)(B)(ii).

Horse Looking argues that the indictment should be dismissed because his conviction under SDCL § 22-18-1 does not satisfy the force requirement of § 921(a)(33)(A)(ii) and because he qualifies for the restoration exception in § 921(a)(33)(B)(ii). The Court addresses each of these arguments in turn.

### A. Force Requirement

To qualify as a misdemeanor crime of domestic violence, an offense must have "as an element, the use or attempted use of physical force." 18 U.S.C. § 921(a)(33)(A)(ii). When, as

4

here, a statute requires that a predicate offense have a particular element, courts must look only to the statutory definition of the predicate offense rather than to the underlying facts to determine whether the particular element is present. Castleman, 134 S. Ct. at 1413 (applying the categorical approach to determine whether a prior conviction had as an element the "use or attempted use of physical force"); United States v. Howell, 531 F.3d 621, 622 (8th Cir. 2008) (same). If the predicate offense contains alternative elements, some of which correspond with the necessary federal element and some of which do not, then courts may apply the modified categorical approach to determine which of the predicate offense's alternative elements formed the basis of the defendant's conviction. Howell, 531 F.3d at 622–23. Under the modified categorical approach, courts may consult the defendant's indictment, the plea agreement, a transcript of the plea colloquy, and "any explicit factual finding by the trial judge to which the defendant assented." Shepard v. United States, 544 U.S. 13, 16 (2005). The focus of the modified categorical approach remains on the elements of the predicate offense, however, and courts are not permitted to use these documents to "discover what the defendant actually did." Descamps v. United States, 133 S. Ct. 2276, 2285, 2287 (2013).

The South Dakota statute under which Horse Looking was convicted provides in relevant part:

> Any person who:
> (1) Attempts to cause bodily injury to another and has the actual ability to cause the injury;
> (2) Recklessly causes bodily injury to another;
> (3) Negligently causes bodily injury to another with a dangerous weapon;
> (4) Attempts by physical menace or credible threat to put another in fear of imminent bodily harm, with or without the actual ability to harm the other person; or
> (5) Intentionally causes bodily injury to another which does not result in serious bodily injury;
> is guilty of simple assault.

5

SDCL § 22-18-1. The parties agree that while some of the ways to commit simple assault under SDCL § 22-18-1 qualify as misdemeanor crimes of domestic violence, others do not. For instance, a conviction under SDCL § 22-18-1(4) would not constitute a misdemeanor crime of domestic violence because merely threatening someone with bodily harm does not satisfy § 921(a)(33)(A)(ii). United States v. Larson, 13 F. App'x 439, 439–40 (8th Cir. 2001) (per curiam) (holding that conviction for committing "an act with intent to cause fear in another of immediate bodily harm" did not meet § 921(a)(33)(A)(ii)'s "use or attempted use of physical force" element); Smith, 171 F.3d at 620 (concluding that conviction for intentionally placing "another in fear of imminent physical contact" was not a misdemeanor crime of domestic violence). On the other hand, a conviction under subsections (1) or (5) of § 22-18-1 would qualify as a misdemeanor crime of domestic violence because these subsections have "as an element, the use or attempted use of physical force." § 921(a)(33)(A)(ii); see Castleman, 134 S. Ct. at 1410, 1413–15 (holding that the term "force" in § 921(a)(33)(A)(ii) means "offensive touching" and concluding that a conviction for "intentionally or knowingly caus[ing] bodily injury" had the use of physical force as an element). Horse Looking concedes that subsections (1) and (5) of § 22-18-1 have the use or attempted use of physical force as an element. Doc. 29 at 4–5.

Because SDCL § 22-18-1 is a "divisible statute," this Court applies the modified categorical approach to determine which of the alternative elements in § 22-18-1 formed the basis of Horse Looking's conviction. See Descamps, 133 S. Ct. at 2281. Horse Looking's state court indictment charged him with violating SDCL § 22-18-1 in three alternative ways: Count 1 alleged that he violated SDCL § 22-18-1(1) by attempting to cause bodily injury to Cassandra; Count 1A alleged that he violated SDCL § 22-18-1(4) by attempting to put Cassandra in fear of

6

imminent bodily harm; and Count 1B alleged that he violated SDCL § 22-18-1(5) by intentionally causing bodily injury to Cassandra. Doc. 33-1 at 4. During his plea colloquy, Horse Looking admitted to physically assaulting Cassandra. Doc. 33-2 at 5. When the state court judge asked Horse Looking how the assault took place, i.e. whether Horse Looking had threatened Cassandra or injured her, Horse Looking admitted that he had pushed her down. Doc. 33-2 at 5. Although Horse Looking said he was unaware whether his pushing Cassandra down caused her any injury, his attorney acknowledged that Cassandra testified to having suffered some abrasions as a result of the incident. Doc. 33-2 at 5–6. Horse Looking is bound by an admission of his attorney.[2] See United States v. Lopez-Guendulain, 238 F. App'x 164, 166 (7th Cir. 2007) (explaining that defense counsel's admissions during state court plea colloquy can bind defendant in later federal proceedings); United States v. Hernandez-Hernandez, 431 F.3d 1212, 1219 (9th Cir. 2005) ("[C]riminal defendants are bound by the admissions of fact made by their counsel in their presence and with their authority."). The state court judge found that the statements provided a factual basis for Horse Looking's plea. Doc. 33-2 at 6.

The Government argues that the plea colloquy establishes that Horse Looking pleaded guilty to a misdemeanor crime of domestic violence. Horse Looking disagrees, arguing that it is impossible to tell from the plea colloquy whether he was convicted of intentionally causing or attempting to cause bodily injury, rather than merely placing another in fear of imminent bodily harm. Specifically, Horse Looking contends that the plea colloquy is insufficient under the

---

[2]The prosecutor added that Horse Looking had shoved Cassandra as well, causing her to hit her head on the wall and putting a hole in the wall, which neither Horse Looking nor his attorney contested at the hearing. Doc. 33-2 at 6. Horse Looking's failure to object could be considered an adoption of the prosecutor's statement. See United States v. Miller, 478 F.3d 48, 51–52 (1st Cir. 2007) (holding that by remaining silent, defendant adopted state court's recitation of factual basis for crime); United States v. Smith, 390 F.3d 661, 665–66 (9th Cir. 2004) (holding that defense counsel conceded as true the prosecutor's factual characterization of an offense where counsel failed to contest the matter).

7

modified categorical approach because the state court judge neither explicitly identified the count to which Horse Looking was pleading guilty nor made findings about the elements in Counts 1 and 1B.

The Eighth Circuit's decision in United States v. Fischer, 641 F.3d 1006 (8th Cir. 2011) demonstrates that the modified categorical approach is not as narrow as Horse Looking asserts. The defendant in Fischer was charged with violating § 922(g)(9) for possessing a firearm after having pleaded guilty to attempted assault in Nebraska state court. 641 F.3d at 1007. Although the factual basis for the defendant's plea indicated that he had bit the nose of his former girlfriend, the defendant argued that the federal indictment should be dismissed because it was impossible to tell whether his Nebraska conviction was for intentionally causing bodily injury to another or merely threatening another in a menacing manner. Id. at 1007–08. Relying on the factual basis, the district court concluded that the defendant's assault conviction qualified as a misdemeanor crime of domestic violence. Id. at 1007. The Eighth Circuit affirmed, finding that there was "little question that the biting of a victim's nose is an intentional act causing bodily harm and not merely a threatening act." Id. at 1009.

Similar to Fischer, the plea colloquy establishes that Horse Looking did not plead guilty to merely attempting to place Cassandra in fear of imminent bodily harm as charged in Count 1A. Horse Looking admitted to pushing Cassandra down and through his counsel admitted to causing her abrasions. Doc. 33-2 at 5–6. Such conduct does not constitute an attempt to place Cassandra in fear of imminent bodily harm, but is a violation of SDCL § 22-18-1(5) for intentionally causing bodily injury to Cassandra which did not result in serious bodily injury. Because SDCL § 22-18-1(5) has the use or attempted use of physical force as an element, Horse Looking's conviction satisfies the force requirement of § 921(a)(33)(A)(ii).

### B. Restoration Exception

As noted above, § 921(a)(33)(B)(ii) provides that "[a] person shall not be considered to have been convicted of" a misdemeanor crime of domestic violence "if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense)." The parenthetical language in § 921(a)(33)(B)(ii) makes clear that a defendant must have lost his civil rights under a state statute for the restoration exception to apply. Logan v. United States, 552 U.S. 23, 36 (2007) (explaining that the "parenthetical qualification" in § 921(a)(33)(B)(ii) "shows that the words 'civil rights restored' do not cover a person whose civil rights were never taken away"); Keeney, 241 F.3d at 1043–44 (holding that restoration exception did not apply to defendant who had not lost his civil rights under state law).

Horse Looking argues that the restoration exception applies to him because his right to possess a firearm was taken away and then restored by SDCL § 22-14-15.2. Section 22-14-15.2 states:

> No person who has been convicted of any misdemeanor crime involving an act of domestic violence may possess or have control of a firearm for a period of one year from the date of conviction. Any violation of this section is a Class 1 misdemeanor. At the end of the one year period, any civil rights lost as a result of this provision shall be restored. Any person who has lost their [sic] right to possess or have control of a firearm as a result of a misdemeanor conviction involving an act of domestic violence, prior to July 1, 2005, shall be restored to those civil rights one year after July 1, 2005. This section shall be repealed on the date when any federal law restricting the right to possess firearms for misdemeanor domestic violence convictions is repealed.

9

> Once eligible under the statute, a person convicted under this section may petition[3] the convicting court for an order reflecting the restoration of any firearm rights lost, if the person has not been convicted within the prior year of a crime for which firearm rights have been lost. A petition filed under this section shall be verified by the petitioner and served upon the states attorney in the county where the conviction occurred. Thirty days after service upon the states attorney, the court shall enter the order, if the court finds that the petitioner is eligible for relief under this section.

SDCL § 22-14-15.2.

The Eighth Circuit in Keeney rejected the same argument Horse Looking makes here. In Keeney, a defendant who was convicted of a misdemeanor crime of domestic violence in North Dakota and later charged with violating § 922(g)(9) argued that he qualified for the restoration exception because North Dakota law provided for the suspension of his right to possess a firearm upon his conviction and the reinstatement of this right once he completed probation. Keeney, 241 F.3d at 1041–42. The Eighth Circuit disagreed, holding instead that the relevant civil rights for purposes of the restoration exception are the rights to vote, hold elective office, and sit on a jury. Id. at 1044. Because the defendant had not lost any civil rights within this "core cluster," the Eighth Circuit concluded that the restoration exception was inapplicable. Id.

Like the defendant in Keeney, Horse Looking did not lose any civil rights within the "core cluster." That is, Horse Looking's misdemeanor conviction did not prevent him from serving as a juror, voting, or holding elective office. See S.D. Const. art. III, §§ 3, 4; S.D. Const. art. VII, § 2; SDCL § 12-3-1; SDCL § 16-13-10. Although South Dakota does have statutes that suspend these civil rights for certain people, the statutes do not apply when, as here, a person was convicted of only a Class 1 misdemeanor for which the maximum sentence is one year

---

[3]Horse Looking did not petition the convicting court for an order reflecting the restoration of his firearm rights as contemplated by SDCL § 22-14-15.2, but he was convicted under SDCL § 22-18-1 and not under SDCL § 22-14-15.2.

10

imprisonment in a county jail. See SDCL § 23A-27-35 (suspending the rights of persons sentenced to "imprisonment in the state penitentiary" to hold public office and serve on a jury); SDCL § 12-4-18 (removing people serving a sentence for a felony conviction from voter registration records).

Horse Looking argues that Keeney is distinguishable because the statutory schemes in North Dakota and South Dakota are different. To be sure, North Dakota did not have a statute like SDCL § 22-14-15.2, which not only specifically addresses the restoration of firearm rights but also suggests that the South Dakota legislature disagreed with federal law indefinitely restricting the firearm rights of those convicted of misdemeanor crimes of domestic violence and sought to allow people convicted of such crimes to qualify for the restoration exception in § 921(a)(33)(B)(ii). As the Eighth Circuit made clear, however, the loss and subsequent restoration of the right to possess a firearm is irrelevant for purposes of the restoration exception; what matters are the "core cluster" rights to vote, hold elective office, and serve on a jury. Because Horse Looking did not lose any of his rights within the "core cluster," he did not have his civil rights restored within the meaning of the restoration exception. Keeney, 241 F.3d at 1044.

### III. Conclusion

For the reasons stated above, it is hereby

ORDERED that Horse Looking's motion to dismiss the indictment, Doc. 28, is denied.

Dated this 10th day of March, 2015.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE